UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

ROBERT LEE BANKS,

        Plaintiff,        2:12-cv-01651-MC

        v.               ORDER

STATE OF OREGON, et al.,

        Defendants.

McSHANE, District Judge.

    Plaintiff, an inmate in the custody of the Oregon Department of Corrections, filed a complaint under 42 U.S.C. § 1983 alleging that defendants violated his First Amendment right of freedom of speech and subjected him to retaliation when they placed him in the Disciplinary Segregation Unit (DSU) for writing a grievance against Sergeant Jose Olvera. In his second claim, plaintiff alleges that defendants violated his Eighth Amendment right to be free from excessive fines and free from cruel and unusual punishment when he was subjected to 12 days in DSU before he was given a misconduct hearing.

1 - ORDER

In his third claim, plaintiff alleges that defendants violated his Fourteenth Amendment right to due process when he was sent to DSU before he was afforded a hearing to address his misconduct charges. Plaintiff also alleges several pages of "additional claims of complaint." As discussed below, these allegation do no contain any discernable claim. Plaintiff seeks damages and equitable relief. Defendants now move for summary judgment (#67).

The relevant facts are as follows. After plaintiff's involvement in a disturbance with another inmate, defendant Olvera issued plaintiff a misconduct report for Disobedience of an Order I. After a disciplinary hearing on February 28, 2012, Hearings Officer James Deacon concluded that the evidence did not support a finding of Disobedience of an Order I, and found plaintiff in violation of Disobedience of an Order II and imposed a sanction of seven days loss of privileges and a $50.00 fine. The sanction was suspended until March 29, 2012 provided that plaintiff had no further violations. On March 7, 2012, defendant Lytle submitted a misconduct report charging plaintiff with Extortion I, False Information to Employees I, and Disobedience of an Order II. After a disciplinary hearing on March 12, 2012, Hearings Officer Deacon found plaintiff in violation of False information to Employees I and dismissed the remaining charges

2 - ORDER

due to insufficient evidence. Plaintiff was sanctioned to seven days loss of privileges and the $50.00 fine from the previous sanction was imposed.

Eleventh Amendment: Plaintiff names the State of Oregon and "ODOC" as defendants in the caption of his complaint.

A state or its officials or agencies may not be sued by private individuals in federal court unless the state has unequivocally consented to that action, or Congress has unequivocally expressed its intent under the Fourteenth Amendment to waive the immunity of the States. Board of Trustees of University of Alabama v. Garrett, 531 U.S. 356 (2001); Seminole Tribe of Florida v. Florida, 517 U.S. 44, 54 (1996); see also, Quern v. Jordan, 440 U.S. 332 (1979); Edleman v. Jordan, 415 U.S. 651, 673 (1984); Pennhurst State School and Hospital v. Halderman, 465 U.S. 89 (1984). The Eleventh Amendment otherwise bars any such action regardless of the nature of the relief sought. Cory v. White, 457 U.S. 85 (1982); Brooks v. Sulpher Springs Valley Elec. Co-Op, 951 F.2d 1050, 1053 (9th Cir. 1991). Individual defendants share in the Eleventh Amendment immunity afforded states and state agencies where the individuals are sued in their official capacities because such suits "are, in essence, actions against the government entity of which the officer is an agent." Mitchell v Los Angeles Community College Dist., 861

F.2d 198, 201-02 (9th Cir. 1999). Under the "arm of the state" doctrine, a state entity and its officers in their official capacities share the state's sovereign immunity because "'the state is the real party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials [or state entities] are nominal defendants.'" Durning v. Citibank, N.A., 950 F.2d 1419, 1423 (9th Cir. 1991) (quoting Ford Mtor Co. V. Dep't of Treasury, 323 U.S. 459, 464 (1945)). A suit against a state officer in his official capacity is effectively considered a suit against the official's office, and therefore, it "is no different than a suit against the State itself." Will v. Michigan Dep't of State Police, 419 U.S. 58, 71 (1989).

Thus, plaintiff's claims against the State of Oregon and the Oregon Department of Corrections are barred by the Eleventh Amendment.[1] In addition, to the extent that plaintiff seeks to hold the individual defendants liable in their official capacities,[2] plaintiff's claims are barred by

---

[1] Plaintiff's claims against the State of Oregon and the ODOC also fail because neither of those enities are a "person" for purposes of §1983, which imposes liability against persons acting under the color of state law. See, Will v. Michigan Dept. Of State Police, 491 U.S. 58, 70-71 (1989).

[2] Plaintiff alleges that "[E]ach defendant is sued individually and in his/her official and personal capacity." Complaint (#6) "additional supporting facts"  p. 2.

4 - ORDER

the Eleventh Amendment.

Plaintiff does not specifically invoke ancillary jurisdiction or allege any specific tort claims arising under the laws of Oregon. However, plaintiff's claim for relief indicates that he is seeking damages for "intentional infliction of emotional distress, reckless infliction of emotional distress (and) defamation." Complaint (#6) p. 6.

If plaintiff's allegations in this regard are construed as attempting to allege claims under the laws of the state of Oregon, such claims are barred by the Eleventh Amendment because the individually named defendants must be dismissed from plaintiff's state law claim and the State of Oregon substituted in their place. ORS 30.265(1) (the "sole cause of action for any tort of officers, employees or agents of a public body acting within the scope of their employment or duties * * * shall be an action against the public body only."); Demaray v. Dept. of Environmental Quality, 127 Or. App. 494, 502 (1994). Upon substitution of the State of Oregon as the sole defendant to the state claims, the claims must be dismissed pursuant to the Eleventh Amendment.[3]

*Respondeat superior:* Plaintiff alleges that defendant Franke is "legally responsible for the operation of Two Rivers

---

[3] In addition, plaintiff has not alleged or established compliance with the Oregon Tort Claim Notice requirements.

5 - ORDER

Correctional Institute (sic) (TRCI), and for the welfare of all the inmates in that prison." Complaint (#6) "additional supporting facts p. 1-2. Plaintiff apparently seeks to hold defendant Franke liable under a theory of *respondeat superior*.

It is well settled that *respondeat superior* is not a proper basis for liability under 42 U.S.C. § 1983. <u>Monell v. Dept. of Social Services of City of New York</u>, 436 U.S. 658, 691-694 (1978); <u>Rizzo v. Goode</u>, 423 U.S. 362, 375-76 (1976); <u>King v. Atiyeh</u>, 814 F.2d 565, 568 (9th Cir. 1987). To establish a § 1983 claim against an individual defendant, a plaintiff must establish personal participation by the defendant in the alleged constitutional deprivation. <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937 (2009).

A "supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." <u>Taylor v. List</u>, 880 F.2d 1040, 1045 (9th Cir. 1989), citing <u>Ybarra v. Reno Thunderbird Mobile Home Village</u>, 723 F.2d 675, 680-81 (9th Cir. 1984). <u>See also</u>, <u>Shaw v. Stroud</u>, 13 F.3d 791, 799 (4th Cir. 1994) (supervisory liability only when a) actual or constructive knowledge of a pervasive and unreasonable risk of injury; b) deliberate indifference to or tacit authorization of the practice; and c) an affirmative causal link between inaction

6 - ORDER

and the injury). Supervisory officials may also be liable if they "implement a policy so deficient that the policy `itself is a repudiation of constitutional rights' and is `the moving force of the constitutional violation.'" <u>Redman v. County of San Diego</u>, 924 F.2d 1435, 1446 (9th Cir. 1991), <u>cert. denied</u>, 112 S. Ct. 972 (1992).

Plaintiff has not alleged any facts that would establish defendant Franke personally participated in the alleged retaliation or excessive and/or improper disciplinary sanction he complains of or any facts that would subject defendant to liability.

<u>Retaliation:</u> Plaintiff alleges that defendants Olvera and Lytle retaliated against him by sending plaintiff to DSU for exercising his First Amendment rights. Specifically, plaintiff alleges that defendants retaliated against plaintiff for filing a grievance against defendant Olvera, by filing a false misconduct report which caused plaintiff to be placed in DSU.

A properly pleaded complaint which alleges retaliation for the exercise of a constitutional right states a cause of action under 42 U.S.C. § 1983. <u>Mt. Healthy City Bd. Of Ed. V. Doyle</u>, 429 U.S. 274 (1977); <u>McDonald v. Hall</u>, 610 F.2d 16 (1st. Cir. 1979); <u>Bruise v. Hudkins</u>, 584 F.2d 223 (7th Cir. 1978). The claim must include an allegation that the plaintiff

7 - ORDER

engaged in conduct that is constitutionally protected and that the conduct was a substantial or motivating factor for the defendant's action. Mt. Healy, id., at p. 287.

"A prisoner suing state prison officials under section 1983 for retaliation must allege that he was retaliated against for exercising his constitutional rights and that the retaliatory action does not advance legitimate penological goals, such as preserving institutional order and discipline." Barnett v. Centoni, 31 F.3d 813, 815-16 (9th Cir. 1994); Rizzo v. Dawson, 788 F.2d 527, 531 (9th Cir. 1985). The plaintiff bears the burden of pleading and proving the absence of legitimate correctional goals for the conduct about which he complains. Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995). Courts should "afford appropriate deference and flexibility to prison officials in the evaluation of proffered penological reasons for conduct alleged to be retaliatory. Id., at 807 (*quoting Sandin v. Conner*, 515 U.S. 472, 482 (1995)).

The nature of a retaliation claim requires that it be "regarded with skepticism, lest federal courts embroil themselves in every disciplinary act that occurs in state penal institutions." Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994).

In this case, the record is clear that plaintiff ignored orders to be quiet and continued to incite another inmate who

was violent and threatening. Under these circumstances, removing plaintiff from the general population was reasonable and advanced the legitimate penological goal of maintaining a safe and secure institution.

Eighth Amendment: Plaintiff alleges that his sanction of 12 days in segregation and a $50.00 fine constituted cruel and unusual punishment in violation of the Eighth Amendment.

In order to establish a claim for cruel and unusual punishment under the Eighth Amendment, a plaintiff must show that the punishment imposed included "elements of severity, arbitrary infliction, unacceptable in terms of contemporary standards, or gross disproportion... ." Ingraham v. Wright, 430 U.S. 651, 658 (1977).

Plaintiff in this case does not come close to meeting that standard. As discussed above, the sanction imposed on plaintiff was consistent with the Oregon Administrative Rules and was not excessive in view of the two separate rule violations. In addition, the record indicates that the $50.00 fine imposed upon plaintiff on the second rule violation was the fine that was suspended from his previous violation and would have not been imposed if plaintiff had not committed a second violation before March 29, 2012. Nothing about plaintiff's sanction was severe, arbitrary, or unacceptable under community standards. Therefore, defendants

9 - ORDER

are entitled to judgment as a matter of law as to plaintiff's Eight Amendment claim.

<u>Fourteenth Amendment:</u> Plaintiff alleges that his Fourteenth Amendment rights were violated when he was placed in DSU before his misconduct hearing because the misconduct report against him was initially dismissed.

Or. Admin. R. § 291-105-0021(3) provides that "[a]n inmate charged with committing a rule violation may be placed in temporary disciplinary segregation status pending resolution of the charge. This action will be taken when the functional unit manager or the officer-in-charge determines that the alleged rule violation charged is of such seriousness that the good order and security of the facility requires immediate removal of the inmate from the general population."

In this case, the officer-in-charge reasonably determined that plaintiff's refusal to comply with the order to cease and desist his participation in the disturbance was of such seriousness as to justify plaintiff's immediate removal from the general population.

In addition, in order for a prison disciplinary sanction to trigger Fourteenth Amendment due process requirements it must impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." <u>Sandin v. Conner</u>, 515 U.S. 472 (1995). Disciplinary

10 - ORDER

segregation is insufficient to implicate a liberty interest. Id.

Assuming *arguendo* that plaintiff could establish that his sanction implicated a liberty interest cognizable under the Fourteenth Amendment, plaintiff has not alleged that he was not afforded due process.

Due process requirements for an inmate at a disciplinary hearing were established in Wolff v. McDonnell, 418 U.S. 539, 560 (1979) as follows. The inmate must (1) have an opportunity to appear before the decision making body, (2) have staff representation if he wishes, (3) have written notice of the charge against him in advance of the hearing;, (4) have conditional opportunity to present witnesses and documentary evidence, and (5) have a written statement of the evidence relied upon and the reasons for the sanction taken. Wolff v. McDonnell, supra at 563-73; see also, Walker v. Summer, 14 F.3d 1415 (9th Cir. 1994); Meachum v. Fano, 427 U.S. 215 (1976) Sandin v. Conner, supra, and 28 CFR 541.15 (a) - (c).

Plaintiff has not alleged that he was denied any of these procedural rights. The allegation that he was confined in DSU prior to his hearing fails to state a Fourteenth Amendment due process claim.

"Additional claims of complaint:" In an apparent supplement to

11 - ORDER

plaintiff's complaint captioned "additional claims of complaint" plaintiff alleges a rather confusing narrative of the grievance history relative to his claims in this case. The allegations reflect plaintiff's dissatisfaction with defendants Franke and Reynolds responses to his grievances. Plaintiff alleges that the defendants' responses create a "chilling effect" on his ability to bring "subsequent grievances to the attention of administrative staff." I find that the allegations of plaintiff's "additional claims" fail to allege a cognizable claim against defendant Franke or Reynolds.

Qualified Immunity:  The United States Supreme Court has held:

"An official is entitled to summary judgment on the ground of qualified immunity where his or her conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Until recently courts considering an official claim of qualified immunity followed the two-step protocol established in *Saucier v. Katz*, 533 U.S. 194 (2001), which required us first to determine whether the defendant violated a constitutional right and then to determine whether that right was clearly established. *See, Pearson v. Callahan*, 555 U.S. __, 129 S.Ct. 808, 818 (2009) (overturning *Saucier* in part). In *Pearson v. Callahan*, the Supreme Court reversed this earlier rule and gave courts discretion to grant qualified immunity on the basis of the "clearly established" prong alone, without deciding in the first instance whether any right had been violated. *Id*. Thus, we may grant qualified immunity if 'the facts that a plaintiff has alleged or shown [do not] make out a violation of a constitutional right' or if 'the right at issue was [not] clearly established at the time of the defendant's alleged conduct.' *Id*. At 816, 818 (internal citations omitted)."

James v. Rowlands, 606 F.3d 646 (9th Cir. 2010).

As discussed above, defendants did not violate plaintiff's constitutional rights when they properly disciplined him for two rules violations that negatively impacted the safety of other inmates and the institution. The record reflects that defendants followed ODOC procedures and administrative rules for conducting disciplinary hearings and imposing sanctions.

However, even if plaintiff's allegations could be construed as stating a colorable constitutional claim, I find that it would not be clear to a reasonable correctional officer that imposing discipline on an inmate under the circumstances described in plaintiff's complaint and defendants' declarations would violate plaintiff's rights. See, Saucier v. Katz, 533 U.S. 194, 202 (2001) ("The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to to a reasonable officer that his conduct was unlawful in the situation he confronted."). Therefore any such right was not "clearly established" and defendants are entitled to qualified immunity.

Conclusion: Based on all of the foregoing, I find that there are no genuine issues of material fact remaining in this case and that defendants are entitled to judgment as a matter of law. Defendants' Motion for Summary Judgment (#67) is allowed. The Clerk of the Court is directed to enter a judgment dismissing this action with prejudice.

13 - ORDER

*Any appeal from this order or the judgment dismissing this case would be frivolous and not taken in good faith.*

DATED this 12 day of May, 2014.

                                                Michael McShane
                                              United State District Judge

14 - ORDER